UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANK TERRERI,

                Plaintiff,

         -vs-                                    07-CV-277-JTC

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

Plaintiff Frank Terreri initiated this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") benefits. Both parties have filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is granted, and plaintiff's motion is denied.

## **BACKGROUND**

Plaintiff was born on June 11, 1965 (Tr. 31).[1] He filed an application for SSDI benefits on September 18, 2003 (Tr. 71-73), alleging disability as of October 30, 2002, due to back problems (*see* Tr. 89). Plaintiff's application was denied initially on March 19, 2004 (Tr. 31-37). He then requested a hearing, which was held by video teleconference on January 5, 2006 before Administrative Law Judge ("ALJ") Owen B. Katzman (Tr. 323-40).

---

[1] References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

Plaintiff testified at the hearing and was represented by counsel. In addition, Timothy P. Janikowski, a vocational expert ("VE"), testified at the hearing.

By decision dated February 22, 2006, the ALJ found that plaintiff was not under a disability, as defined in the Social Security Act (Tr. 23-30). Following the sequential process for evaluating disability claims outlined in the Social Security Administration Regulations (*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that plaintiff's impairments, while severe, did not meet or equal the criteria listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 25-26). The ALJ then found that plaintiff had the residual functional capacity ("RFC") for a range of light work, which precluded him from performing his past job as a construction worker (Tr. 26-29). Finally, considering plaintiff's age, educational background, RFC, and crediting the testimony of the vocational expert, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy, directing a finding of not disabled (Tr. 29-30).

The ALJ's decision became the Commissioner's final determination on March 16, 2007, when the Appeals Council denied plaintiff's request for review (Tr. 6-9). Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. § 405(g), seeking reversal of the Commissioner's determination.

In support of his motion for judgment on the pleadings, plaintiff contends that the Commissioner's final determination should be reversed because the ALJ failed to properly assess the opinion of plaintiff's treating physician, and failed to present a representative hypothetical to Mr. Janikowski, which rendered his vocational expert testimony unreliable. Each of these contentions is discussed in turn below.

**DISCUSSION**

**I.    Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.      Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).

The Social Security Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy,

considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[2]  However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity at any time relevant to his decision (Tr. 25).  Upon review of plaintiff's medical records and hearing testimony, which the ALJ found to be "not entirely credible" (*id*. at 27), the ALJ determined that plaintiff's impairments–status post lumbar back surgery, degenerative disc disease, and chronic lumbar back pain–were severe, but not of sufficient severity to meet or equal the criteria of Listings 1.02 (*Major dysfunction of a joint(s)*) or 1.04 (*Disorders of the spine*) (Tr. 25-26).  The ALJ then found that plaintiff had the RFC to engage in a range of light exertional activities with the limitations that he be allowed to

---

[2]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

alternate sitting and standing at will and avoid bending (Tr. 29). The ALJ agreed with the Physical RFC Assessment dated March 19, 2004 by a state consultant, who reviewed plaintiff's medical records and determined that plaintiff was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit about 6 hours in an 8-hour workday; stand and walk at least 2 hours in an 8-hour workday; and push and pull up to his capacity to lift (Tr. 27). Based on this RFC assessment, the ALJ found that plaintiff could not perform his past relevant work as a construction laborer (pipe layer), described by the VE to be an unskilled job performed at the very heavy exertional level (Tr. 29).

Proceeding to the fifth step of the sequential analysis, the ALJ considered plaintiff's age (37 years old at the alleged onset date), his high school education, his work experience, his RFC as described above, and the testimony of the VE, and determined that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 30). Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from the alleged onset date to the date of the decision (Tr. 30).

Plaintiff contends that, in making this determination, the ALJ failed to comply with the Regulations governing the assessment of the weight to be given to the opinions of treating physicians. Plaintiff also contends that, in presenting hypothetical questions to the VE, the ALJ mischaracterized the evidence in the record with respect to plaintiff's RFC, rendering the testimony of the VE unreliable.

What follows is the court's assessment of these contentions in light of the rules which the ALJ must follow in evaluating opinion evidence provided by treating physicians and vocational experts, as set forth in the Regulations and controlling case law.

**III.     Treating Physicians' Opinions**

The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist. *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion."  *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

In this case, ALJ Katzman discussed the medical evidence which documents plaintiff's work-related injury to his back, sustained in October 1999 when the walls of a six-foot trench collapsed on him while he was laying pipe (*see* Tr. 299). Plaintiff subsequently completed two courses of physical therapy (Tr. 27; *see also* Tr. 161-70, 171-86), and was seen throughout the relevant period for neurological consultation and pain management by Dr. Eugene Gosy (Tr. 226-48). Plaintiff was initially kept out of work for several months, but was returned to "light duty for the mild to moderate partial disability with lifting restrictions at 20 pounds" in February 2000 (Tr. 244).

Plaintiff first saw Dr. William Capicotto, an orthopedic surgeon, for surgical consultation in January 2001, and continued to see him on a fairly regular basis throughout the relevant period (*see* Tr. 219-76). In his initial report to the New York State Workers' Compensation Board,[3] Dr. Capicotto stated that although plaintiff was cleared for return to light duty in February 2000, he had been performing full duty work until December 2000, when he was laid off (Tr. 275). Upon examination, Dr. Capicotto found plaintiff's cervical spine, left shoulder, and lumbar spine conditions to be "100% causally related" to the October 1999 injury (Tr. 276). In February 2001, Dr. Capicotto reported that plaintiff was "totally disabled" as the result of continuing severe pain in his lower back, neck, and shoulders (Tr. 272).

---

[3] Plaintiff received a lump-sum settlement of his workers' compensation claim which, as noted by the ALJ (*see* Tr. 28), is a determination made by a state agency based on its own rules and is not binding on the Commissioner. *See* 20 C.F.R. § 404.1504; *see also Shiver v. Apfel*, 21 F. Supp. 2d 192, 197 (E.D.N.Y. 1998) (explaining difference in statutory standards).

In September 2001, Dr. Capicotto reported that plaintiff had again returned to work "with a marked disability, which is to his credit" (Tr. 265).  Although plaintiff exhibited surgical problems in all three compromised areas, Dr. Capicotto did not recommend surgery at that time because of the potential for resulting permanent total disability and its "devastating financial effects . . . ." (*Id.*).

In December 2002, Dr. Capicotto reported that plaintiff stopped working as of October 30, 2002, because he could no longer tolerate the pain.  Dr. Capicotto stated that plaintiff was "totally disabled from 10/30/02" (Tr. 260).  Dr. Capicotto repeated this assessment in his February 2003 report upon review of MRI results (Tr. 258-59).  After further diagnostic procedures, including discography and CAT scan, Dr. Capicotto finally performed "extensive spinal surgery" in June 2003 which included "multi-level laminectomies at L3, L4 and L5 along with discectomies at L3, L4 and L5, implantation of posterior lumbar interbody machined bone struts and right iliac crest bone graft, in addition to bilateral posterolateral fusion from L3 to the sacrum and implantation of rods and screws" (Tr. 251).  Dr. Capicotto's post-surgery follow-up reports indicate that, as of June 2004 (one year after the surgery), plaintiff was "totally and permanently disabled" (Tr. 291).  Dr. Capicotto continued: "I do not believe that he is ever going to be able to return to gainful employment.  He is at risk for requiring removal of instrumentation and also is at risk for injury at the L3/4 level above the fusion that I performed" (*id* at 291-92).

In his hearing decision, ALJ Katzman discussed Dr. Capicotto's opinion regarding plaintiff's condition post-surgery, but found it to be outweighed by the reports of "[a]ll other

doctors who have given a more specific functional capacity [assessment]" (Tr. 28).[4]  In particular, the ALJ relied on the report of Dr. John Ring, who conducted an independent medical examination of plaintiff on June 28, 2004, in connection with plaintiff's workers' compensation claim (Tr. 299-301).  Dr. Ring noted that plaintiff had "greatly improved as far as his back was concerned" with only occasional pain in the right groin, right hip and lower back.  Based upon his examination, Dr. Ring found that plaintiff had a "marked partial disability" and had reached maximum medical improvement (Tr. 299-300).  With regard to work status, Dr. Ring stated:

> The claimant could do a sedentary job.  This would have to be a job where he could get up and move about as necessary to be comfortable.  His lifting should be restricted to less than 20 lbs. and no bending.
>
> Dr. Capicotto's opinion is that the claimant is totally disabled[.] I would feel that he is certainly totally disabled from his form of work, but not totally disabled from any job, as I noted that he could work with restrictions.

(Tr. 301).

The ALJ also referred to the report of Dr. Stephen Dina, who performed a consultative examination of plaintiff on March 8, 2004 (Tr. 280-84).  Dr. Dina reported that

---

[4]The ALJ also noted that "the issue of 'disability' is a matter reserved to the Commissioner" (Tr. 28).  In this regard, the Regulations provide:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(e)(1).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). However, the courts have often reminded ALJs that this guideline must be considered in conjunction with the requirement that a treating source's opinion on the issue of the nature and severity of the claimant's impairments be given controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.  See, e.g., Green-Younger v. Barnhart, 335 F.3d 99, 1-6 (2d Cir. 2003).

plaintiff was able to walk heel-to-toe without difficulty, fully squat, stand with normal stance, and get on and off the examining table without assistance. Examination of the cervical spine revealed full flexion, extension, lateral flexion, and full rotary movement bilaterally. Dr. Dina noted limitations in range of motion in the lumbar spine and straight-leg raising in the supine position due to back pain. His diagnosis was lumbar back pain, status post lumbar back surgery, with fair prognosis. He noted "mild limitation" of function, with restricted activity involving repetitive bending, squatting, rotation movements of the lumbar spine, lifting medium weights, and assuming fixed positions without the ability to change position (Tr. 282).

In addition, the ALJ referred to a Physical Residual Functional Capacity Assessment dated March 19, 2004, which was completed by a non-examining agency review physician (Tr. 285-90). This assessment indicated that plaintiff was able to perform a full range of activities at the light exertional level, such as lifting and carrying up to 20 pounds occasionally, and 10 pounds frequently; sitting, standing, and walking about 6 hours in an 8-hour workday; and pushing and pulling up to his capacity to lift. The ALJ found that plaintiff's testimony regarding his inability to sustain work at the light exertional level was not entirely credible, given his statements that he performs a wide variety of household chores, walks two miles around Delaware Park, and receives only minimal medical treatment from his primary physician.

Based on this review, the court finds adequate support in the case record for the ALJ's determination to give greater weight to the reports of the consulting and reviewing physicians than he gave to the opinion of plaintiff's treating orthopedic surgeon. Although the ALJ did not indicate in his written decision that he fully considered the nature and

extent of plaintiff's treatment relationship with Dr. Capicotto, or the other factors enumerated in 20 C.F.R. § 404.1527(d)(2), he provided a detailed summary and analysis of the reports and records of all treating, examining, and reviewing medical sources, including Dr. Capicotto's assessment that plaintiff's medical condition rendered him unable to work for the purposes of his workers' compensation claim. This analysis makes it clear that the ALJ based his findings upon a thorough consideration of the record, including the medical evidence and plaintiff's testimony, and not upon an arbitrary substitution of his own judgment for competent medical opinion. *See Pease v. Astrue*, 2008 WL 4371779, at *7-8 (N.D.N.Y. September 17, 2008) ("The mere fact that the ALJ did not specifically state the weight afforded to [the treating physician]'s opinion does not mean that the opinion was not properly considered."); *Marine v. Barnhart*, 2003 WL 22434094, at *3 (S.D.N.Y. 2003) (ALJ's failure to comment on weight afforded to opinions was not improper as decision indicates that findings were made "[a]fter consideration of the entire record").

Accordingly, plaintiff is not entitled to reversal or remand on the basis that the ALJ failed to comply with the Social Security Regulations governing the assessment of the weight to be given to the opinions of the claimant's treating physicians.

### IV.  Hypothetical Questions Posed to the Vocational Expert

Plaintiff also contends that the ALJ erred in relying on the testimony of the VE regarding the availability of jobs in the economy plaintiff could do because the hypothetical presented to the VE did not accurately reflect plaintiff's functional restrictions. More specifically, plaintiff claims that the ALJ asked the VE to assume that the hypothetical

Case 1:07-cv-00277-JTC   Document 11   Filed 03/18/09   Page 13 of 14

claimant could lift "up to 20 pounds" (Tr. 337), mischaracterizing Dr. Ring's assessment that plaintiff could lift "less than 20 lbs." (Tr. 301).

Relevant case law provides that testimony from a VE constitutes substantial evidence regarding a claimant's ability to obtain and perform substantial gainful employment when that testimony is based on properly phrased hypothetical questions which reflect the full extent of the claimant's capabilities and impairments. *See Mikol v. Barnhart*, 494 F. Supp. 2d 211, 226 (S.D.N.Y. May 25, 2007); *see also Scott v. Apfel*, 2000 WL 34032812, at *16 (N.D. Iowa February 17, 2000). The vocational expert's testimony "is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002) (citing *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980)). Thus, "[i]f a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir.1998).

In this case, as demonstrated by the discussion above, the ALJ's assessment of plaintiff's functional limitations was based on a thorough review of the totality of the medical and non-medical evidence of record, not just on Dr. Ring's findings. Indeed, the ALJ found Dr. Ring's opinion to be "largely representative" of all medical sources who provided specific assessments of plaintiff's functional capacity (Tr. 28). Accordingly, the hypothetical posed to the VE adequately reflected plaintiff's physical limitations, and the distinction drawn by plaintiff based upon whether he could lift "up to" or "less than" 20 pounds is, in the court's view, without a difference.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 5) is granted, and plaintiff's cross-motion (Item 9) is denied.

The Clerk of the Court is directed to enter judgment in favor of defendant.

So Ordered.

\s\ John T. Curtin  
JOHN T. CURTIN  
United States District Judge

Dated: March 10 , 2009  
p:\opinons\07-277.mar209